IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| PRINCIPAL MANUFACURING CORPORATION, | ) ) ) | CASE NO. 1:08 CV 393 |
|---|---|---|
| Plaintiff, | ) ) | JUDGE J. BARRETT |
| vs. | ) ) ) | **MEMORANDUM IN SUPPORT** |
| ESPEY & ASSOCIATES, INC., | ) ) | **OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S** |
| Defendant. | ) | **COMPLAINT** |

On June 10, 2008, Plaintiff, Principal Manufacturing Corporation ("Principal") filed a Complaint for Declaratory Relief against Defendant Espey & Associates, Inc. (hereinafter referred to as the "Espey"). Principal invoked this Court's jurisdiction over its Complaint pursuant to 28 U.S.C. § 1332 (a) by claiming that diversity of citizenship existed and that the amount in controversy implicated by its declaratory judgment claim exceeded $75,000.00. (Complaint at ¶ 6.) Principal's general allegation that diversity of citizenship existed was supported by factual allegations, but Principal's general allegation that the amount in controversy exceeded $75,000.00 lacked any factual allegations to support it.

This Court should dismiss Principal's Complaint against Espey. The declaratory relief sought by Principal in its Complaint does not place in controversy the sum of $75,000.00, which is the minimum amount necessary for a party to invoke this Court's jurisdiction. 28 U.S.C. § 1332. Principal is attempting to confer jurisdiction on this Court where none exists.

In its Complaint, Principal alleges that it entered into a sales representative agreement with Espey (referred to in the Complaint as the "Agreement") at sometime before 1998. (Complaint at ¶ 8.) Principal does not attach a copy of the Agreement to its Complaint, indicate that the agreement was an oral agreement, or otherwise explain why it has not attached a copy of the agreement to its Complaint.

Principal's Complaint pleads some but not all of the terms and conditions of this Agreement. It alleges that: (a) Principal would compensate Espey for its sales representative services on a commission basis; (b) either party could terminate the Agreement at any time; and (c) Espey was not entitled to any commissions on products shipped after the effective date of termination. (Complaint at ¶¶ 9-11.)

In its Complaint, Principal alleges that, on May 19, 2008, Espey terminated its sales representative services, effective July 19, 2008. (Complaint at ¶¶ 1, 12-13.) Principal attached a copy of this letter to its Complaint as Exhibit A. Principal further pled that it advised Espey by e-mail that it had received a copy of its letter, that Espey's services should terminate May 31, 2008, and that Espey would not be entitled to commissions after May 31, 2008. (Complaint at ¶ 14.) Principal did not attach this e-mail as an exhibit to its Complaint

According to Principal, there is a controversy between Principal and Espey as to whether Espey is entitled to any commissions during the period June 1, 2008 through July 19, 2008, which Principal defines in the Complaint as the "Disputed Period." (Complaint at ¶¶ 15, 20.)

Principal seeks to confer jurisdiction on this Court by claiming that this controversy over the effective date of termination has a value in excess of $75,000.00,

even though Principal provides no specific factual allegations in its Complaint that would support any claim that the amount of commissions that Principal may owe to Espey during the 49 days of the Disputed Period exceeds $75,000.00.

Espey contests that, in the event that the effective termination date is July 19, 2008 as opposed to May 31, 2008, Principal will owe it additional commissions in the amount of at least $75,000.00. (See Exhibit 1, Affidavit of Terry McLaughlin.) A party seeking to litigate in federal court must allege in its pleadings all facts necessary to establish jurisdiction and bears the burden of establishing the existence of federal subject matter jurisdiction. When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. In determining whether jurisdiction exists, a court may consider affidavits and other proofs outside the pleadings to resolve disputed jurisdictional facts. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Fireman's Fund Ins. Co. v. Railway Express Agency*, 253 F. 2d 780, 784 (6th Cir. 1958); *Cameron v. Children's Hospital Medical Center*, 131 F. 3d 1167, 1170-1172 (6th Cir. 1997); *McIntire v. Ford Motor Company*, 142 F. Supp. 2d 911, 915-916, 919-925 (S.D. Ohio W.D. 2001); *Buckeye Recyclers v. Chep USA*, 228 F. Supp. 2d 818 (S.D. Ohio W.D. 2002); *McCarthy v. Republic Tobacco, LP*, 2006 U.S. Dist. LEXIS 13834 (S.D. Ohio E.D. 2006) (a copy of which is attached hereto as Exhibit 2). Further, the Sixth Circuit has consistently held that the amount in controversy for federal diversity jurisdiction purposes is determined as of the time the action is commenced. *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976); *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

Although the specific amount of commissions owed by Principal in the event that Espey is entitled to the additional 49 days of sales commissions for the Disputed Period is only known to Principal, Espey cannot in good faith admit that the amount of commissions during the Disputed Period only would equal or exceed $75,000. In his affidavit, Mr. McLaughlin establishes that the historic average of commissions paid to Espey by Principal was approximately $16,360 per month, or $200,000 per year. Averaged over the 49 day Disputed Period, this average rate of commissions would support an amount in controversy of approximately $26,800. While it is possible that sales during the Disputed Period exceeded the average of historical commissions, or that Principal understated past commissions which would have tended to depress the average, there is simply no known volume of sales in Espey's territory by Principal which would place an amount in controversy in excess of $75,000.00. Indeed, Principal would have to owe Espey approximately $558,000 per year in commissions, or $45,550 per month, for the sum of $75,000 to be in controversy for the disputed period. Therefore, to the best of the knowledge, information and belief of Mr. McLaughlin, the sales commissions for the disputed period would be over $60,000 short of establishing the jurisdictional minimum amount in controversy requirement applicable to jurisdiction in diversity of citizenship cases.

Espey is mindful that Principal may have filed its Complaint with the idea of inviting a counterclaim by Espey for sales commissions owed prior to the Disputed Period in a forum that Principal believes would be favorable. The problem, however, is that the jurisdictional minimum must be established by the Complaint, and a Counterclaim in excess of the jurisdictional minimum does not confer jurisdiction.

*Firestone Financial Corporation v. Syal*, 327 F.Supp. 2d 809 (N.D. Ohio E.D. 2004). Thus, even if Espey were to counterclaim in this Court, the counterclaim would not establish jurisdiction and ultimately the Court would dismiss the case as lacking jurisdiction over it. Espey obviously wishes to avoid that procedural trap. Indeed, Espey would have to file a complaint alleging an amount in controversy in excess of $75,000 for diversity of citizenship to confer jurisdiction to the federal district court.

As such, there can be no federal jurisdiction over Principal's Complaint. This Court must dismiss Principal's Complaint for lack of subject matter jurisdiction.

    Respectfully submitted,

    /s/ John E. Schoonover
    John E. Schoonover (0025623)
    Douglas A. Andrews (0011464)
    SCHOONOVER, ANDREWS &
    ROSENTHAL, LLC
    North Point Tower, Suite 1720
    1001 Lakeside Avenue
    Cleveland, Ohio 44114
    Telephone: (216) 589-9600
    Facsimile: (216) 589-9800

    Counsel for Defendant